1

**CARPENTER LAW GROUP**
Todd D. Carpenter (CA 234464)
2   402 West Broadway, 29th Floor
San Diego, California 92101
3   Telephone:  619.347.3517
Facsimile:    619.756.6991
4
**PATTERSON LAW GROUP**
5   James R. Patterson (CA 211102)
402 West Broadway, 29th Floor
6   San Diego, California 92101
Telephone: 619.398.4760
7   Facsimile:  619.756.6991

8   Attorneys for Plaintiff

9

10                    IN THE UNITED STATES DISTRICT COURT

11          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

12

13

RANDY NUNEZ, On Behalf of Himself           Case No.    '13 CV 0495 MMA DHB
14   and All Others Similarly Situated,

15             Plaintiff,                                  **CLASS ACTION COMPLAINT FOR:**

16   vs.                                                      1.   VIOLATION OF THE UNFAIR
                                                                   COMPETITION LAW, Business and
17   NBTY, INC., a Delaware corporation;                           Professions Code §17200 *et seq.*;
ARTHRITIS RESEARCH CORP., a                        2.   VIOLATION OF THE
18   Delaware Corporation; and NATURE'S                            CONSUMERS LEGAL REMEDIES
BOUNTY, INC., a Delaware Corporation,                   ACT,
19                                                                 Civil Code §1750, *et seq.*; and
             Defendants.                                 3.   BREACH OF EXPRESS
20                                                                 WARRANTY.

21

22                                                            **DEMAND FOR JURY TRIAL**

23

24

25

26

27

28

Plaintiff RANDY NUNEZ brings this action on behalf of himself and all others similarly situated against Defendants NBTY, INC., a Delaware corporation; ARTHRITIS RESEARCH CORP., a Delaware Corporation; and NATURE'S BOUNTY, INC., a Delaware Corporation, (collectively "Defendants") and states:

## NATURE OF ACTION

1.     Defendants distribute, market and sell "Flex-a-min", a line of supplements that purportedly provide a variety of health benefits centered around reducing joint pain, improving joint comfort, and strengthening or repairing joints.  Defendant represents that the primary active ingredient in its Flex-a-min products is "glucosamine". Through an extensive and uniform nationwide advertising campaign, Defendants represent that Flex-a-min will show "improvement in Joint Comfort in 7 Days!," and that it "Eases Joint Flare-Ups," and "Helps relieve occasional joint stiffness." Other representations claim that "Joint Flex," a "proprietary blend of beneficial ingredients that promote joint comfort" is formulated to "Soothe, Cushion, Nourish, Revitalize [and] Support" joints [referencing an image of a knee joint].

2.     The statements represented on the Flex-a-min product packaging are "structure-function" claims which must be limited to a description of the role that a dietary ingredient is "intended to affect the structure or function in humans." 21 U.S.C. § 343 (r)(6).   In order to make a structure-function claim, the dietary supplement manufacturer is required to have substantiation that such statements are truthful and not misleading. *Id.*

3.     Defendants do not have any competent, reliable scientific evidence that substantiates their representations about the health benefits of consuming Flex-a-min. In fact, all available scientific evidence demonstrates that the Flex-a-min products have no efficacy at all, are ineffective in the treatment of joint pain, and provide no joint comfort. Numerous scientifically valid studies have been conducted on the ingredients, including the core or primary ingredient in Flex-a-min, glucosamine and they have universally demonstrated that glucosamine and glucosamine in combination with other ingredients

such as chondroitin have absolutely no scientific value in the treatment of joint pain or discomfort.

4.      Further, pursuant to 21 C.F.R. § 101.93, Defendants are prohibited from making "disease claims" about their product.  Disease claims are generally described as statements which claim to diagnose, mitigate, treat, cure or prevent disease where the statements claim "explicitly or implicitly, that the product…Has an effect on the characteristic signs or symptoms of a specific disease or class of diseases, using scientific or lay terminology." *Id.*  Defendants make representations on the product label for the Flex-a-min products which directly relate to the treatment of Osteoarthritis. The Mayo Clinic defines symptoms of osteoarthritis as follows:

- ***Pain.*** Your joint may hurt during or after movement.
- ***Tenderness.*** Your joint may feel tender when you apply light pressure to it.
- ***Stiffness.*** Joint stiffness may be most noticeable when you wake up in the morning or after a period of inactivity.
- ***Loss of flexibility.*** You may not be able to move your joint through its full range of motion.
- ***Grating sensation.*** You may hear or feel a grating sensation when you use the joint.
- ***Bone spurs.*** These extra bits of bone, which feel like hard lumps, may form around the affected joint.

*See*   http://www.mayoclinic.com/health/osteoarthritis/DS00019/DSECTION=symptoms (last viewed February 21, 2013).

5.      Defendants represent that the active ingredients in Flex-a-min products provide relief for nearly all of these symptoms: "Together they provide joint comfort by helping to lubricate the joint matrix, build strong bones and nourish cartilage and connective tissues." *See* product label, attached as Exhibit "A".  This bold claim is in addition to the other misrepresentations claiming the product will show improvement in Joint Comfort in 7 Days, ease joint flare-ups and relieve occasional joint stiffness. Defendants also   represent themselves   as a sponsor of the "Arthritis Foundation,"

implying that the product has an association with the treatment of arthritis. *See* Exhibit A, "Proud Sponsor of the Arthritis Foundation". These statements and representations are present on every product label for the Defendants' Flex-a-min product. Taken together, these statements explicitly and implicitly represent that Flex-a-min is intended to prevent, treat, or otherwise cure symptoms associated with Osteoarthritis.

6.    Defendants did not obtain the requisite New Drug Application prior to marketing and selling its Flex-a-min product.  As such, making these statements and representations without a New Drug Application ("NDA") approval from the FDA constitute misbranding and false and misleading conduct pursuant to 21 C.F.R. § 101.93.

7.    , Defendants convey their uniform, deceptive message to consumers through a variety of media including their website and online promotional materials, and, most important, at the point of purchase, on the front of the Products' packaging/labeling where it cannot be missed by consumers.  The only reason a consumer would purchase Flex-a-min is to obtain the advertised joint-health benefits, which the Flex-a-min products do not provide.

8.    As a result of Defendants' deceptive advertising and false claims regarding the efficacy of the Flex-a-min product, Plaintiff and the proposed class have purchased a product which does not perform as represented and they have been harmed in the amount they paid for the product, which, in the case of Plaintiff Nunez is approximately $40.00 per bottle.

9.    Plaintiff brings this action on behalf of himself and other similarly situated consumers who have purchased Defendants' Flex-a-min products to halt the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased these Products.  Based on violations of state unfair competition laws and Defendants' breach of express warranty, Plaintiff seeks injunctive and monetary relief for consumers who purchased the Flex-a-min products.

/ / /

**JURISDICTION AND VENUE**

10.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and many members of the Class are citizens of a state different from Defendants.

11.     This Court has personal jurisdiction over Defendants because Defendants are authorized to conduct and do conduct business in California.  Defendants have marketed, promoted, distributed, and sold the Flex-a-min product in California and Defendants have sufficient minimum contacts with this State and/or sufficiently avail themselves of the markets in this State through their promotion, sales, distribution and marketing within this State to render the exercise of jurisdiction by this Court permissible.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while she resided in this judicial district.  Venue is also proper under 18 U.S.C. §1965(a) because Defendants transact substantial business in this District.

**PARTIES**

13.     Plaintiff Randy Nunez resides in San Diego, California.  In or around August of 2012, Plaintiff was exposed to and saw Defendants' representations regarding the joint health benefits of Flex-a-min by reading the Flex-a-min product label in an Albertson's grocery store near his home in downtown San Diego.  In reliance on the claim that Flex-a-min would "show improvement in Joint Comfort in 7 Days" and the other representations made on the product packaging as described herein,  Plaintiff purchased the Flex-a-min Triple Strength Glucosamine Chondroitin formula with Joint Flex Plus Vitamin D3 200 IU + MSM at an Albertson's grocery store located at 655 14th Street, San Diego, California 92101. He paid approximately $40.00 for the product.  At the time, Mr. Nunez was engaged in a rigorous physical fitness regimen.  He purchased the product believing it would provide the advertised joint health benefits and improve his joint soreness and comfort. The Flex-a-min product Plaintiff purchased did not provide the comfort it

represented and did not provide any Joint Comfort within 7 days as advertised.  As a result, Plaintiff suffered injury in fact and lost money.  Had Plaintiff known the truth about Defendants' misrepresentations and omissions, he would not have purchased the Flex-a-min product.

14.    Defendant NBTY, Inc. ("NBTY") is a corporation organized and existing under the laws of the state of Delaware.  NBTY's headquarters is at 2100 Smithtown Ave., Ronkonkoma, New York 11779. NBTY manufactures, advertises markets, distributes, and/or sells the Flex-a-min products to tens of thousands of consumers in California and throughout the United States.

15.    Defendant Arthritis Research Corp. ("Arthritis Research") is a corporation organized and existing under the laws of the state of Delaware.  Arthritis Research is a subsidiary of NBTY.  Arthritis Research is headquartered is at 110 Orville Drive, Bohemia, New York 11716. Arthritis Research manufactures, advertises, markets, distributes, and/or sells the Flex-a-min products to tens of thousands of consumers in California and throughout the United States.

16.    Defendant Nature's Bounty, Inc. ("Nature's Bounty") is a corporation organized and existing under the laws of the state of Delaware.  Nature's Bounty is a subsidiary of NBTY.  Nature's Bounty is headquartered is at 110 Orville Drive, Bohemia, New York 11716. Nature's Bounty manufactures, advertises, markets, distributes, and/or sells the Flex-a-min products to tens of thousands of consumers in California and throughout the United States.

17.    Plaintiff is informed and believes, and thus alleges, that at all times herein mentioned, each of the Defendants was the agent, employee, representative, partner, joint venturer, and/or alter ego of the other Defendant and, in doing the things alleged herein, was acting within the course and scope of such agency, employment, representation, on behalf of such partnership or joint venture, and/or as such alter ego, with the authority, permission, consent, and/or ratification of the other Defendant.

/ / /

Case No. _____                           6
CLASS ACTION COMPLAINT

# FACTUAL ALLEGATIONS

## *The FLEX-A-MIN Glucosamine Chondroitin products*

18.     Since the early part of the century, Defendants have distributed, marketed and sold the Flex-a-min product on a nation-wide basis.  The Flex-a-min product is sold at a variety of grocery chains and low cost retailers, including Wal-Mart, CVS, Walgreens, and Albertson's. The Flex-a-min product is available in a variety of sized bottles from 60 count all the way up to 180 count. Plaintiff purchased a 120 count bottle for approximately $40.00.  The Flex-a-min line of products includes: (1) Flex-a-min Triple Strength Bone Shield; (2) Flex-a-min Double Strength; (3) Flex-a-min Triple Strength Joint Flex Formula with Aflapin™; (4) Flex-a-min Super Glucosamine 2000 Plus; and (5) Flex-a-min Triple Strength with Hyaluronic Acid (collectively, "Flex-a-min" or "the Products"). The products are indistinguishable from an "efficacy" standpoint as Plaintiff alleges that the core ingredients in the products are virtually identical and that the products are each completely inefficacious.

19.     The primary active ingredient in the Flex-a-min product is Glucosamine. It is the inclusion or prevalence of this ingredient from which Defendant generates all of its joint-health related claims. Since the inception of the Flex-a-min product line, Defendants have consistently advertised Flex-a-min as, "improving joint comfort," "lubricating" cartilage, and "support[ing] and/or nourish[ing] cartilage. As more fully set forth herein, the scientific evidence regarding the use of glucosamine, taken alone or in combination with other ingredients, does not provide **any** of the joint health benefits represented by Defendants.

20.     Since launching the Flex-a-min product, Defendants have consistently conveyed the message to consumers throughout the United States, including California, that the Flex-a-min product provides superior joint comfort on an expedited basis – within 7 days compared to other Glucosamine Chondroitin products.  It does not.  Defendants' superior joint comfort claims are false, misleading and deceptive; not only do they not provide the advertised benefit within 7 days, they provide no benefit at all.

21.     In addition to glucosamine, which Defendants prominently promotes as being the primary active ingredient that provides the purported joint health benefits, Defendants's Flex-a-min products contain smaller amounts of other purported ingredients, including: chondroitin sulfate; methylsulfonylmethane ("MSM"); hyaluronic acid; and Aflapin (Boswellia Serrata).   As more fully discussed below, these minor ingredients are also not effective in providing the joint health benefits represented by Defendants, but in any event the focus of this action is on the uniform false and deceptive representations and omissions that Defendants makes about glucosamine on the package labeling of each of the Flex-a-min products.

22.     Even though numerous clinical studies have found that the primary ingredient in Defendants' Flex-a-min products, glucosamine, alone or in combination with chondroitin and other supplements, is ineffective, Defendants continue to state on the Products' packaging and labeling that Flex-a-min helps to, inter alia: to support/nourish cartilage, "lubricate" joints and improve "joint comfort" without any limitation on which joints, for adults of all ages and without any limitation on what stages of joint related ailments. Front, back, and side shots of a representative Flex-a-min Triple Strength with Joint Flex label appear as follows:

/ / /

/ / /

Front Product Label:                            Side Product Label:





/ / /

/ / /

/ / /

1

Back Product Label                                        Side Product Label

2

3

4

**Directions:** For adults, take two (2) tablets daily, preferably with a meal. Take this product with plenty of fluids. For best results, take the full dosage of Flex-a-min® daily, on a continual basis.

## Supplement Facts

Serving Size 2 Tablets
Servings Per Container 30

| Amount Per Serving | | %Daily Value |
|---|---|---|
| Calories | 10 | |
| Total Carbohydrate | 2 g | 1%** |
| Vitamin D (as D3 Cholecalciferol) | 2,000 IU | 500% |
| Sodium | 40 mg | 2% |
| Glucosamine HCl | 1,500 mg (1.5 g) | *** |
| Flex-a-min® Joint Flex™ Proprietary Blend | 1,310 mg (1.3 g) | *** |
| Chondroitin Sulfate Complex | 1,210 mg (1.2 g) | *** |
| (Chondroitin Sulfate, Collagen (Hydrolyzed Gelatin), Citrus Bioflavonoids, MSM (Methylsulfonylmethane), Boswellia serrata (resin), Silica, Hyaluronic Acid (as Sodium Hyaluronate)) | | |
| Allapin™ Boswellia serrata Extract (resin) 100 mg | | *** |

**Percent Daily Values are based on a 2,000 calorie diet.
***Daily Value not established.

**Other Ingredients:** Vegetable Cellulose, Povidone, **Contains <2% of:** Natural Caramel Color, Titanium Dioxide Color, Vegetable Magnesium Stearate.

Contains shellfish (shrimp, crab, lobster, crayfish) ingredients.

**No** Artificial Flavor or Sweetener, **No** Preservatives, **No** Sugar, **No** Milk, **No** Lactose, **No** Soy, **No** Gluten, **No** Wheat, **No** Yeast.

**WARNING:** If you are pregnant, nursing or taking any medications, consult your doctor before use. Discontinue use and consult your doctor if any adverse reactions occur. Not intended for use by persons under the age of 18. Keep out of reach of children. Store in a cool, dry place. Do not use if seal under cap is broken or missing.

◊per serving

1. This statement is based on two human studies of Allapin™ using subjective measures in which participants rate their joint health. In these studies, after 7 days, improvement continued to be seen, including in biomarker analysis.

Allapin™ is a trademark of Laila Nutraceuticals, India. International patents pending.

Visit Us On the Web  www.flexamin.com
For More Information on Flex-a-min® Call 1-800-255-8490
Formulated and Manufactured by
Arthritis Research Corp.
Bohemia, NY 11716 © Arthritis Research Corp. 2010

*These statements have not been evaluated by the Food and Drug Administration.
This product is not intended to diagnose, treat, cure or prevent any disease.



*Joint Flex™ is a proprietary blend of beneficial ingredients that promote joint comfort.*

**JOINT FLEX™ Formulated to*:**

▶ **SOOTHE**
▶ **CUSHION**
▶ **NOURISH**
▶ **REVITALIZE**
▶ **SUPPORT**

25 / / /

26 / / /

27 / / /

28

---

Case No.                                    10

23.    Plaintiff and Class members have been and will continue to be deceived or misled by Defendants' deceptive joint health benefit claims.   Plaintiff purchased consumed Flex-a-min during the Class period and in doing so, read and considered the joint health benefit representations on the Flex-a-min product label and based his decision to purchase the Flex-a-min product based on the joint health benefit claims and specifically on the representation that it would provide benefits faster than other brands, including "within 7 days". Defendants' joint health benefit claims were a material factor in influencing Plaintiff's decision to purchase and use Flex-a-min. Plaintiff would not have purchased Flex-a-min had he known that the Product does not provide the represented joint comfort.

24.    Independent scientific studies confirm that the representations made on the Flex-a-min product label, relied upon by Plaintiff in making his purchase, are false and misleading. Despite knowledge of these studies, Defendant continued to make the described representations, misleading Plaintiff and members of the class into believing the Flex-a-min product had actual efficacy and would provide the benefits described in its advertising.

25.    Defendants knew or should have known that glucosamine alone and taken in combination with the other ingredients present in Flex-a-min have no actual medicinal value and do not provide any of the warranted benefits as represented by Defendant's Flex-a-min products' labels. In fact, there is no scientific study demonstrating that any glucosamine product can regenerate cartilage.  To the contrary, as numerous studies have confirmed, neither glucosamine, chondroitin, or any other supplements or ingredients actually regenerate cartilage or provide joint comfort or relief from pain:

26.    In February 2004, a Supplement to the American Journal of Orthopedics published an article entitled "Restoring Articular Cartilage in the Knee." The authors concluded that adult cartilage cannot be regenerated because it is not vascularized, meaning that blood does not flow to damaged cartilage which prevents any mechanism for regeneration.

27.    In February 2006, the New England Journal of Medicine published a report on a double blind study addressing in part the efficacy of ingesting glucosamine hydrochloride 1500mg. *Clegg, et al.* Glucosamine Chondroitin Sulfate, and the Two in Combination for Painful Knee Osteoarthritis. New Eng. J. Med. 354:795-808 (Feb. 2006). The study concluded that there was no showing that the supplement was effective in treating osteoarthritis.

28.    In February 2008, the Annals of Internal Medicine published a study entitled, "Effect of Glucosamine Sulfate on Hip Osteoarthritis: a Randomized Trial." Annals of Internal Medicine 2008 Feb 19;148(4): 268-277. The article published the results of a study which examined whether glucosamine sulfate has an effect on the symptoms and structural progression of hip osteoarthritis during two years of treatment; the conclusion reached from the study was that glucosamine sulfate was no better than placebo in reducing symptoms and progression of hip osteoarthritis.

29.    In October 2008, the American College of Rheumatology's Journal, Arthritis & Rheumatism published a report on a double blind study conducted at multiple centers in the United States examining joint space width loss with radiograph films in patients who were treated with glucosamine hydrochloride. The authors concluded that after two years of treatment with this supplement, the treatment did not demonstrate a clinically important difference in joint space width loss. Sawitzke et aI., Glucosamine for Pain in Osteoarthritis: Why do Trial Results Differ?, Arthritis Rheum., 58:3183-3191 (2008).

30.    In March 2009, Harvard Medical School published a study conclusively proving that the ingestion of glucosamine could not affect the growth of cartilage. The study took note of the foregoing 2006 and 2008 studies, which "cast considerable doubt" upon the value of glucosamine. The authors went on to conduct an independent study of subjects ingesting 1500 mg of glucosamine, and proved that only trace amounts of glucosamine entered the human serum, far below any amount that could possibly affect cartilage. Moreover, even those trace amounts were present only for a few hours after ingestion. The authors noted that a 1986 study had found no glucosamine in human

plasma after ingestion of four times the usual 1500 mg of glucosamine chloride or sulphate. Silbert, Dietary Glucosamine Under Question, Glycobiology 19(6):564-567 (2009).

31.    In April 2009, the Journal of Orthopedic Surgery published an article entitled, "Review Article: Glucosamine." The article's authors concluded that, based on their literature review, there was "little or no evidence" to suggest that glucosamine was superior to a placebo even in slowing down cartilage deterioration, much less regenerating it. Kirkham, et aI., Review Article: Glucosamine, Journal of Orthopedic Surgery, 17(1): 72-6 (2009).

32.    In October 2008, the journal Arthritis and Rheumatism published an article entitled, "The Effect of Glucosamine and/or Chondroitin Sulfate on the Progression of Knee Osteoarthritis." The authors reported on the results of a 24-month, double-blind, placebo-controlled study, which demonstrated that there were no statistically significant differences in progressive loss of joint space width for subjects taking glucosamine and chondroitin versus placebos. Sawitzke, et aI., The Effect of Glucosamine and/or Chondroitin Sulfate on the Progression of Knee Osteoarthritis, Arthritis and Rheumatism, 58(10): 3183-3191 (2008).

33.    In June 2011, the Journal of Pharmacy & Pharmaceutical Sciences published an article entitled, "The Glucosamine Controversy; A Pharmacokinetic Issue." The authors concluded that regardless of the formulation used, no or marginal beneficial effects were observed as a result of low glucosamine bioavailability. Aghazadeh-Habashi and Jamali, The Glucosamine Controversy; A Pharmacokinetic Issue, Journal of Pharmacy & Pharmaceutical Sciences, 14(2): 264-273 (2011).

34.    To date, there are only two studies, both of which are more than a decade old, purporting to claim that the ingestion of glucosamine can affect the growth or deterioration of cartilage, both sponsored by a glucosamine supplement manufacturer: Pavelka et. aI. Glucosamine Sulfate Use and Delay of Progression of Knee Osteoarthritis, Arch. Intern. Med., 162: 2113-2123 (2002); Reginster et. aI. Long-term Effects of

Glucosamine Sulphate On Osteoarthritis Progress: A Randomised, Placebo-Controlled Clinical Trial, Lancet, 357: 251-6 (2001). As noted in the April 2009 Journal of Orthopedic Surgery article, the methodologies in those studies had "inherently poor reproducibility," and even minor changes in posture by the subjects during scans could cause false apparent changes in cartilage. The authors of the Journal of Orthopedic Surgery article explained the manufacturer-sponsored studies' findings by noting that "industry-sponsored trials report positive effects more often than do non-sponsored trials and more find pro-industry results." No reliable scientific medical study has shown that glucosamine and chondroitin, alone or in combination, have a structure modifying effect that will regenerate cartilage that has broken down or worn away.

35.    As a result, Plaintiff and the Class members have been damaged by their purchases of the Flex-a-min product and have been deceived into purchasing Products that they believed, based on Defendants' representations, provided joint health benefits and overall joint comfort within 7 days, when, in fact, they do not.

36.    Defendants have reaped enormous profits from their false marketing and sale of the Flex-a-min products.

## CLASS DEFINITION AND ALLEGATIONS

37.    Plaintiff brings this action on behalf of herself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Defendants for violations of California state laws and/or similar laws in other states:

**Multi-State Class Action**
All consumers who purchased a Flex-a-min product, within the applicable statute of limitations, in the United States for personal use until the date notice is disseminated.

Excluded from this Class are Defendants and their officers, directors and employees, and those who purchased a Flex-a-min product for the purpose of resale.

38.     In the alternative, Plaintiff brings this action on behalf of himself and all other similarly situated California consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

**California-Only Class Action**
All California consumers who purchased a Flex-a-min product, within the applicable statute of limitations, for personal use until the date notice is disseminated.

Excluded from this Class are Defendants and their officers, directors and employees, and those who purchased a Flex-a-min product for the purpose of resale.

39.     ***Numerosity***.  The members of the Class are so numerous that joinder of all members of the Class is impracticable.   Plaintiff is informed and believes that the proposed Class contains thousands of purchasers of the Flex-a-min products who have been damaged by Defendants' conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

40.     ***Existence and Predominance of Common Questions of Law and Fact***. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)     whether the claims discussed above are true, or are misleading, or objectively reasonably likely to deceive;

(b)     whether Defendants' alleged conduct violates public policy;

(c)     whether the alleged conduct constitutes violations of the laws asserted;

(d)     whether Defendants engaged in false or misleading advertising;

(e)     whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

(f)     whether Plaintiff and Class members are entitled to other appropriate remedies, including corrective advertising and injunctive relief.

41.   ***Typicality***.  Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above and were subject to Defendants' deceptive joint health benefit claims that accompanied each and every Flex-a-min product Defendant sold.  Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class.

42.   ***Adequacy of Representation***.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

43.   ***Superiority***.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants.  It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

44.   The Class also may be certified because Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

45.   Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin

and prevent Defendants from engaging in the acts described, and requiring Defendants to provide full restitution to Plaintiff and Class members.

46.     Unless a Class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiff and Class members.  Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

## COUNT I
### Violation of Business & Professions Code §17200, *et seq.*

47.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

48.     Plaintiff brings this claim individually and on behalf of the Class.

49.     As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendants' conduct because he purchased a Flex-a-min product in reliance on Defendants' joint-health benefit claims, including *inter alia*, that the Flex-a-min product:

- "Shows improvement in Joint Comfort in 7 days;"
- "Eases Joint Flare-ups;"
- "Helps Relieve Occasional Joint Stiffness;"
- "…provide joint comfort by helping to lubricate the joint matrix, build strong bones and nourish cartilage and connective tissue;" and
- [Is] "Formulated to "Soothe," "Cushion," "Nourish," "Revitalize," and "Support" –in reference to a graphic of a knee joint.

but did not receive a Product that provided any joint comfort at all, and provided no comfort within the proscribed 7 day period. .

50.     The Unfair Competition Law, Business & Professions Code §17200, et seq. ("UCL"), and similar laws in other states, prohibit any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.  In the course of conducting business, Defendants committed unlawful business practices by, *inter alia*,

making the above referenced claims in paragraph 49 and as alleged throughout herein (which also constitutes advertising within the meaning of §17200) and omissions of material facts related to the numerous scientific studies which demonstrate no joint-health benefits derived from the consumption of the ingredients present in Flex-a-min, and violating Civil Code §§1572, 1573, 1709, 1711, 1770 and Business & Professions Code §§17200, et seq., 17500, et seq., and the common law.

51.     Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

52.     Defendants' actions also constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendants engaged in false advertising, misrepresented and omitted material facts regarding the Flex-a-min product, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

53.     As stated in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws in California and other states, resulting in harm to consumers.  Defendants' acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of Business & Professions Code §17200, et seq.

54.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

55.     Business & Professions Code §17200, et seq. also prohibits any "fraudulent business act or practice."

56.     Defendants' actions, claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, et seq.

57.     Plaintiff and other members of the Class have in fact been deceived as a result of their reliance on Defendants' material representations and omissions, which are described above. This reliance has caused harm to Plaintiff and other members of the Class who each purchased a Flex-a-min product.  Plaintiff and the other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

58.     As a result of their deception, Defendants have been able to reap unjust revenue and profit.

59.     Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

60.     Plaintiff, on behalf of himself, all others similarly situated, and the general public, seeks restitution and disgorgement of all money obtained from Plaintiff and the members of the Class collected as a result of unfair competition, an injunction prohibiting Defendants from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

## COUNT II
### Violations of the Consumers Legal Remedies Act –
### Civil Code §1750 *et seq.*

61.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

62.     Plaintiff brings this claim individually and on behalf of the Class.

63.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, et seq. (the "Act") and similar laws in other states. Plaintiff is a "consumer" as defined by California Civil Code §1761(d).  The Products in the Flex-a-min line of glucosamine chondroitin products are "goods" within the meaning of the Act.

64.     Defendants violated and continue to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with

Plaintiff and the Class which were intended to result in, and did result in, the sale of the Flex-a-min products:

(5)   Representing that [the Products] have . . . approval, characteristics, . . . uses [and] benefits . . . which [they do] not have . . . .

\*        \*        \*

(7)   Representing that [the Products] are of a particular standard, quality or grade . . . if [they are] of another.

\*        \*        \*

(9)   Advertising goods . . . with intent not to sell them as advertised.

\*        \*        \*

(16)  Representing that [the Products have] been supplied in accordance with a previous representation when [they have] not.

65.    Defendants violated the Act by representing and failing to disclose material facts on the Flex-a-min labeling and packaging and associated advertising, as described above, when they knew, or should have known, that the representations were false and misleading and that the omissions were of material facts they were obligated to disclose.

66.    Pursuant to §1782(d) of the Act, Plaintiff and the Class seek a court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

67.    Pursuant to §1782 of the Act, Plaintiff notified Defendants in writing by certified mail of the particular violations of §1770 of the Act and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act.  Copies of the letters are attached hereto as Exhibit B.

68.    If Defendants fail to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act, Plaintiff will amend this complaint to add claims for actual, punitive and statutory damages, as appropriate.

69.   Defendants' conduct is fraudulent, wanton and malicious.

70.   Pursuant to §1780(d) of the Act, attached hereto as Exhibit C is the affidavit showing that this action has been commenced in the proper forum.

## COUNT III
## Breach of Express Warranty

71.   Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

72.   Plaintiff brings this claim individually and on behalf of the Class.

73.   The Uniform Commercial Code section 2-313 provides that an affirmation of fact or promise, including a description of the goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise and to the description.

74.   At all times, California and other states have codified and adopted the provisions in the Uniform Commercial Code governing the express warranty of merchantability.

75.   As discussed above, Defendants expressly warranted on each and every Product label of the Flex-a-min products that the product lived up to the represented joint-health benefits described herein and listed on the product labels.  The joint-health benefit claims made by Defendants are affirmations of fact that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise.  Plaintiff placed importance on Defendants' representations.

76.   All conditions precedent to Defendants' liability under this contract have been performed by Plaintiff and the Class.

77.   Defendants were provided notice of these issues by, *inter alia*, the instant Complaint.

78.   Defendants breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing a Product that provided joint

comfort and/or easing joint flare-ups and/or relieving occasional joint stiffness as represented.

79.   As a result of Defendants' breach of their contract, Plaintiff and the Class have been damaged in the amount of the price of the Products they purchased.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A.   Certifying the Class as requested herein;

B.   Awarding Plaintiff and the proposed Class members damages;

C.   Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the proposed Class members;

D.   Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of their conduct and pay them all money they are required to pay;

E.   Ordering Defendants to engage in a corrective advertising campaign;

F.   Awarding attorneys' fees and costs;

G.   Providing such further relief as may be just and proper.

/ / /

/ / /

/ / /

1

**DEMAND FOR JURY TRIAL**

2          Plaintiff hereby demands a trial of her claims by jury to the extent authorized by

3   law.

4

5   Dated:  March 1, 2013                              **CARPENTER LAW GROUP**

6

7                                                      By:  */s/ Todd D. Carpenter*

8                                                             Todd D. Carpenter (CA 234464)
                                                              402 West Broadway, 29th Floor
9                                                             San Diego, California 92101
                                                              Telephone: 619.347.3517
10                                                            Facsimile:  619.756.6991

11                                                            **PATTERSON LAW GROUP**
                                                              James R. Patterson (CA 211102)
12                                                            402 West Broadway, 29th Floor
                                                              San Diego, California 92101
13                                                            Telephone: 619.398.4760
                                                              Facsimile:  619.756.6991

14

15                                                     Attorneys for Plaintiff

16

17

18

19

20

21

22

23

24

25

26

27

28